DECISION AND JOURNAL ENTRY
{¶ 1} Defendant/Appellant, Michael Whalen, appeals his conviction in the Lorain County Court of Common Pleas. We affirm.
 {¶ 2} On June 22, 2006, Defendant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony and one count of obstructing official business in violation of R.C. 2921.31(A), a fifth-degree felony. The indictment was based an incident that occurred on April 12, 2006, during which Defendant, a violator at-large, attempted to hit probation officer, Damian Rodriguez, with his vehicle while fleeing apprehension. Defendant pled not guilty to both charges and was tried to a jury on December 17, 2006. Defendant was convicted by the jury and sentenced to six years of incarceration for the felonious assault conviction and 11 months of incarceration for the obstructing official business conviction. The sentences were to be served concurrently. *Page 2 
 {¶ 3} Defendant timely appealed his conviction for felonious assault and raises one assignment of error.
 Assignment of Error "[Defendant's] conviction for felonious assault was against the manifest weight of the evidence. The jury lost its way when it found [Defendant] `knowingly' attempted to cause physical harm."
 {¶ 4} In his sole assignment of error, Defendant argues that his conviction for felonious assault was against the manifest weight of the evidence because there is no evidence to demonstrate that he knowingly attempted to harm Rodriguez and, in fact, the evidence demonstrates that he did not drive the vehicle directly towards Rodriguez.
 {¶ 5} "[A] manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997),78 Ohio St.3d 380, 390 (Cook, J., concurring). If a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances if the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 6} A person may be convicted of felonious assault under R.C. 2903.11(A)(2) if evidence establishes the person knowingly "cause[d] or attempted] to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is *Page 3 
aware that such circumstances probably exist." R.C. 2901.22(B). A deadly weapon is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). Within the meaning of R.C. 2923.11(A), "a car, used as a weapon, can be considered a deadly weapon[.]" State v. Millender, 9th Dist. No. 21349, 2003-Ohio-4384, at ¶ 15, citing State v. Jaynes, 9th Dist. No. 20937, 2002-Ohio-4527, at ¶ 12; State v. Noble (Feb. 28, 1996), 9th Dist. No. 95CA006118, at *2; and State v. Davidson (June 20, 1990), 9th Dist. No. 89CA004641, at *2.
 {¶ 7} Parole officer David Gaul was with Rodriguez on April 12, 2006, and witnessed the incident. Gaul testified that he and others had been trying to locate Defendant, a violator at-large, for several weeks prior to the incident and that Defendant had dived through a glass window on one occasion to escape them. Gaul stated that on the day in question, he and Rodriguez followed the car of Ms. Erin Farris after receiving a tip that she was going to pick up Defendant. Gaul indicated that he saw Ms. Farris pull into a driveway and slide over to the passenger side of the vehicle. Gaul testified that he then saw Defendant come out from behind a pine tree in the front yard, look directly at them, and run for the car, which was still running. Gaul indicated that the officers then pulled their car behind the vehicle in the driveway to block it in the driveway.
 {¶ 8} Gaul testified that the officers exited the vehicle with guns drawn and approached Defendant's car yelling who they were and advising Defendant to exit the vehicle. Gaul stated that he approached the car on the passenger side and Rodriguez approached on the driver's side of the vehicle. Gaul indicated that as they approached, the rear tires of Defendant's car started spinning. Eventually, Gaul stated, the tires locked up, the car popped into gear, and Defendant "whip[ped] the vehicle around" so that it was aimed into the front yard where Rodriguez was *Page 4 
standing to the left of the pine tree. Gaul indicated that Rodriguez had his firearm drawn and had it pointed at Defendant. Gaul stated that he was behind the car at that point and could see the Defendant through the rear window of the car. He saw Defendant leaning towards the side and then watched Defendant drive "the vehicle straight at Officer Rodriguez." Gaul testified that he screamed for Rodriguez to get out of the way and Rodriguez did so by jumping in front of the tree.
 {¶ 9} Gaul indicated that Defendant then drove at a high rate of speed across the yard and down the street. Gaul testified that only a few seconds elapsed between the time Defendant started spinning his tires and when he escaped onto the street. Gaul testified that he never thought about discharging his weapon because his partner was directly in front of Defendant and would have been in danger. Gaul also testified that Defendant could have taken another route across the front yard that would not have endangered Rodriguez. Gaul identified various pictures of the scene, including the pine tree and tire tracks.
 {¶ 10} Rodriguez's testimony supported that of Gaul. Rodriguez further testified that Defendant was aware of their presence because he looked at them every time they yelled at him to exit the car. Rodriguez explained that after Defendant's car fishtailed in his direction, he was standing about a foot away from the pine tree and to its left. Gaul stated that he took aim at Defendant with his weapon and Defendant responded by motioning "toward the passenger as if to avoid a potential shot," thereby further demonstrating that Defendant saw him standing in front of his car. Rodriguez finally testified that Defendant kept driving his car towards him and "[t]o avoid being struck, [he] had to physically dive out of the way." Rodriguez indicated that Defendant never decelerated and in fact increased his speed after he fishtailed and as he drove towards him, looking directly at him. Rodriguez also testified that Defendant could have *Page 5 
escaped by a different route that would not have put Rodriguez in danger. Rodriguez testified that he did not fire his gun because he did not want to endanger Defendant's female passenger or Gaul who was right behind the vehicle. Rodriguez identified the pictures of the scene.
 {¶ 11} Based on the foregoing, we cannot say that the jury clearly lost its way in determining that Defendant knowingly attempted to cause physical harm to Rodriguez with his car. Evidence at trial demonstrated that Defendant knew that Rodriguez and Gaul were at the scene, their specific location, and that Rodriguez had a gun pointed at him. Moreover, Defendant looked Rodriguez directly in the eye as he drove his car towards him, requiring Gaul to dive out of the way to escape being hit. Defendant's conviction for felonious assault is not against the manifest weight of the evidence.
 {¶ 12} Defendant's assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is *Page 6 
instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 CARR, P. J., DICKINSON, J., CONCUR *Page 1